**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hilario GONZALEZ–BALDERAS,
Sr., Defendant–Appellant.**

No. 92–1482.

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 31, 1994.

Winston E. Cochran, Jr., Mike DeGeurin, Houston, TX, for defendant-appellant.

Joe C. Lockhart, Delonia A. Watson, Asst. U.S. Attys., Marvin Collins, U.S. Atty., Mark D. McBride, Asst. U.S. Atty., Dallas, TX, for plaintiff-appellee.

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and DAVIDSON,* District Judge.

POLITZ, Chief Judge:

Hilario Gonzalez–Balderas, Sr. appeals his convictions of narcotics offenses and life imprisonment sentences. We affirm in all respects, except as to one conspiracy count and concurrent sentence.

### Background

Gonzalez–Balderas was indicted with 41 others for his role in a cocaine distribution operation that reached from Colombia to Matamoros, Mexico to New York City. He was in charge of the distribution of cocaine in Houston, facilitated the shipment of cocaine to other locales, and was responsible for the funnelling of cocaine profits back to the top echelon of the organization in Matamoros. A jury convicted him of conspiring to possess more than five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 846, engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, and conspiring to transport funds out of the United States to promote an unlawful activity in contravention of 18 U.S.C. § 371. The district court imposed sentences of life imprisonment on each of the Title 21 counts and a five-year sentence for the § 371 conspiracy conviction, all to run concurrently. This appeal timely followed.

### Analysis

Gonzalez–Balderas assigns numerous errors which we address in turn.

1. Government challenge for cause.

Gonzalez–Balderas contends that the district court erred in granting the government's challenge for cause of prospective juror Wayne Green. Green admitted to a conviction for possession of marihuana. His voir dire examination included the following:

> The Court: Is there anything about that experience that you think would affect you should you be selected to serve as a juror [in] this case?
>
> Green: I been thinking about that. As it stands right now, I think I could give a fair judgment. There was somewhat what I consider to be entrapment in my experience, and if that were to come out in this case, I might be biased a little bit.
>
> . . . .
>
> The Court: What is your definition of entrapment so we'll know what kind of evidence you are talking about?
>
> Green: Well, in my case it was being shown forty thousand dollars and people will do. a lot of things for forty thousand dollars. To me that's entrapment when they come to you and you don't go to them, and that was my experience.
>
> . . . .
>
> Government: I would say that it seems to me that he was treated unfairly by the FBI.
>
> The Court: Is that a fair statement of the way you feel?
>
> Green: I would say that about the entire situation, not only the FBI but mostly the Dallas police officers, Dallas and Richardson. That's who—The FBI treated me pretty good.
>
> The Court: Okay. And they were not in the picture that long?
>
> [no response]
>
> The Court: I'm not sure myself which law enforcement agencies may be involved in the case before us here, but if any of those law enforcement agencies are involved—

---

* District Judge of the Northern District of Mississippi, sitting by designation.

the FBI, the City of Dallas police, the City of Richardson police—do you think that your feelings about the way that you were treated in your experience would affect your ability to be impartial in this case?

Green: It could to a certain degree to be honest with you. Right now from these proceedings I think I could be fair, but I don't know what's going to come out in court.

. . . .

Defense Counsel: If this case were an FBI case as opposed to a local agency case and if there is no entrapment issue that is raised in this case, do you feel like you could be fair and impartial to both sides?

Green: Yes, I do. If there is no entrapment.

 We afford wide latitude to the trial court in determining the impartiality of a potential juror and reverse only for an abuse of discretion. We have only the cold record before us; the trial court had the opportunity to observe the voice and demeanor of the person in determining what he really was saying and in assessing his credibility.[1] We perceive no reason to disturb the trial court's assessment herein. Green's prior conviction of a narcotics offense, albeit comparatively minor, posed substantial potential for bias in the trial of an accused narcotics trafficker.[2] Indeed, Green admitted to such doubts about his impartiality. The combination of objective grounds for bias and subjective doubts of impartiality entitled the trial court to discount Green's conditional affirmation that he could be fair. Gonzalez–Balderas's reliance on jurisprudence concerning excuse of Witherspoon[3] jurors in capital cases is misplaced. In death penalty cases removal of a potential juror on the basis of opposition to the death penalty is subject to heightened scrutiny.[4]

 In any event, Gonzalez–Balderas does not contest the impartiality of the panel that actually judged his case. This is fatal to his objection. We held in Prati that improper removal of a member of the venire is not grounds for reversal in a non-capital case unless the jurors who actually sat were not impartial within the meaning of the sixth amendment. Gonzalez–Balderas argues that this rule should be limited to improper denial of a defendant's challenges. Prati, however, was not so limited; it was an appeal of the grant of a government challenge for cause, as here. We may not ignore the decision of a prior panel absent an intervening Supreme Court ruling, legislation, or a decision by this court sitting en banc. This assignment of error is rejected.

2. Batson objection.

 There were three Hispanic Americans on the venire; the government struck one with a peremptory challenge. Gonzalez–Balderas contends that it did so for racial reasons in contravention of Batson v. Kentucky.[5] Proceeding directly to the ultimate question of discrimination vel non,[6] we agree with the district court that the government proffered a race-neutral reason for its challenge, the force of which Gonzalez–Balderas did not overcome.

The person excused, Rudolfo Serna, testified that he had two relatives who were police officers in the Rio Grande Valley. The prosecuting attorney explained that police corruption associated with cocaine traffic across the border is endemic in that area. Because he anticipated that testimony on this subject might be presented at trial, the prosecutor feared potential bias. We find this explanation more than adequate to dispel any inference of discrimination, particularly in light of the fact that the government did not

---

1. *United States v. Hinojosa*, 958 F.2d 624 (5th Cir.1992).

2. *See United States v. Jones*, 712 F.2d 115 (5th Cir.1983).

3. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

4. *United States v. Prati*, 861 F.2d 82 (5th Cir. 1988).

5. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

6. *United States v. Pofahl*, 990 F.2d 1456 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 266, 126 L.Ed.2d 218 and —— U.S. ——, 114 S.Ct. 560, 126 L.Ed.2d 460 (1993).

strike either of the two other potential jurors of Hispanic descent.

### 3. "Seek the truth" jury charge.

In its closing instruction to the jury on the duty to deliberate, the court explained:

> To reach a verdict, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.
>
> It is your duty to consult with one another and to deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
>
> Remember, at all times, you are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in this case.

Gonzalez–Balderas contends that instructing the jury that its "sole interest is to seek the truth" dilutes the reasonable-doubt standard of proof.

 As an abstract concept, "seeking the truth" suggests determining whose version of events is more likely true, the government's or the defendant's, and thereby intimates a preponderance of evidence standard.

Such an instruction would be error if used in the explanation of the concept of proof beyond a reasonable doubt.[7] The district court, however, did not use it in this way. Rather, the trial court began its instructions with a clear definition of the government's burden of proof in which it repeatedly stated that the defendant could not be convicted unless the jury found that the government had proven him guilty beyond a reasonable doubt. It correctly defined proof beyond a reasonable doubt as "proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs." There is no reasonable likelihood that the jury inferred that the single reference at the end of the charge to "seeking the truth," rendered as it was in the context of an admonition to "not give up your honest beliefs," modified the reasonable doubt burden of proof.[8]

We found no plain error in such a charge in *United States v. Winn*,[9] where the defendant did not timely object. We now hold that the charge is not erroneous under the standard of plenary review accorded when, as here, an objection is properly preserved. Nevertheless, although the sentence is taken from the Fifth Circuit Pattern Jury Instructions,[10] trial courts, in an abundance of caution, may wish to delete it from their instructions.[11]

### 4. Coconspirator statements.

Gonzalez–Balderas contends that the district court erred by admitting statements of his coconspirators without either a prior finding that the statements were admissible un-

---

7. Cf. *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

8. *See Estelle v. McGuire*, —— U.S. ——, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (reaffirming that the standard for review of an ambiguous jury instruction is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution).

9. 948 F.2d 145 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1599, 118 L.Ed.2d 313 (1992).

10. Fifth Circuit Pattern Jury Instructions (Criminal), No. 1.25 (1990).

11. The charge as given differs somewhat from the pattern instruction, which suggests a sentence stating: "Your sole interest is to seek the truth from the evidence in the case, to decide whether the government has proved the defendant guilty beyond a reasonable doubt." The additional clause—"to decide whether the government has proved the defendant guilty beyond a reasonable doubt"—cuts both ways. On the one hand, by repeating that the jury must find guilt beyond a reasonable doubt, it arguably reaffirms the government's burden of proof. On the other hand, the juxtaposition of "seeking the truth" and "guilt beyond a reasonable doubt" arguably conflates the two concepts.

der Rule 801(d)(2)(E) of the Federal Rules of Evidence [12] or a finding that a prior determination was impractical. His challenge is foreclosed by circuit precedent.

In *James* we held that the district court should require the government to establish a Rule 801(d)(2)(E) predicate before admitting coconspirator statements, unless the court finds that order of proof impractical. In that event, the court may conditionally admit the statement subject to a subsequent final determination.[13] We have approved deferral of a *James* ruling until the close of the government's case.[14] If the district court finds the statements to be admissible, the defendant suffers no prejudice from the order of proof.[15] Here, the district court made its *James* ruling at the close of the government's case, finding the requisite foundation. Gonzalez–Balderas has not shown that the district court abused its discretion in deferring its ruling. Regardless, if the court's substantive finding was correct, he suffered no prejudice from the delay. Similarly nonprejudicial was the omission of an express finding that an earlier determination was not reasonably practical. It matters not whether the final decision as to the admissibility of the statements could have been made earlier if the decision to admit them ultimately was correct. Gonzalez–Balderas, however, contests the decision to admit statements that he says were made before he joined the conspiracy. This argument misperceives the law. We have held that the fact that the challenged statement was made before the defendant joined the conspiracy is "of no consequence," [16] provided that "there was evidence of [the defendant's] subsequent knowledge and willingness to participate in the conspiracy." [17] There was such evidence herein. Gonzalez–Balderas asks us to disregard our precedent; even if we were so inclined, we could not do so.

#### 5. Transcripts.

The government introduced into evidence several Spanish language tape recordings with English language transcripts. The government played the tape recordings to the jury and the sponsoring witness identified the voices. In some instances, however, the government played only part of the tape recordings. Gonzalez–Balderas objects to admission of those portions of the transcripts accompanying the parts of the tapes that were not played, arguing that the voices were not identified.

As the trial court observed, the jury was capable of listening to the entirety of the tape recordings and deciding whether the voices changed. If the voices changed and the transcript did not so reflect, the jury was bound by its instructions to disregard the transcript. After the government authenticated the transcripts as accurate renditions of the audio recordings, it was incumbent on Gonzalez–Balderas to raise any specific objections that he may have had to the identification of a particular speaker.[18] He did not do so and will not be heard to complain now.

#### 6. Sentencing.

The district court sentenced Gonzalez–Balderas to life imprisonment for each of his convictions under 21 U.S.C. § 846 and § 848, as prescribed by the Sentencing Guidelines. Gonzalez–Balderas challenges several of the underlying calculations. Even if he were

---

12. Under Fed.R.Evid. 801(d)(2)(E) statements by coconspirators are admissible as nonhearsay if the government proves that a conspiracy existed, that the declarant and the defendant were members and that the statement was made during the course of and in furtherance of the conspiracy. *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

13. *James; United States v. Fragoso*, 978 F.2d 896 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1664, 123 L.Ed.2d 282 (1993).

14. *Fragoso*.

15. *James.*

16. *United States v. Osgood*, 794 F.2d 1087, 1093 (5th Cir.), *cert. denied*, 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986).

17. *United States v. Rocha*, 916 F.2d 219, 240 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991).

18. *United States v. Armendariz–Mata*, 949 F.2d 151 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992).

correct, the sentence prescribed by the Guidelines would not change.

▮▮▮▮ Gonzalez–Balderas contends that the entire 13,600 kilograms of cocaine seized from the enterprise cannot be attributed to him. The evidence adduced at trial, however, established that six shipments of cocaine, each consisting of 600 to 650 kilograms, were delivered to Gonzalez–Balderas. Whether 13,600 kilograms or 3,600 kilograms are used, the base offense level under the § 2D1.1 Drug Quantity Table is 42. U.S.S.G. § 2D1.5, the guideline for 21 U.S.C. § 848 convictions, mandates the addition of 4 levels, resulting in a base offense level of 46. The maximum offense level on the Guideline grid is 43, directing a sentence of life imprisonment whether the defendant's criminal history category is I, as Gonzalez–Balderas urges, or II, as the district court found. Regardless of the disposition of Gonzalez–Balderas' objections to the additional enhancements,[19] his Guidelines sentence is life imprisonment.

Gonzalez–Balderas, however, contends that the district court might have granted his request for a downward departure had his offense level been lower. We are not persuaded. The district court considered a life sentence necessary as a deterrent in light of the vast profits that Gonzalez–Balderas stood to gain in his role as a middle manager in a large-scale enterprise. Because the refusal to depart did not result from an assigned error, it could not warrant reversal of the sentence.[20]

### 7. Double jeopardy.

▮▮▮ Finally, Gonzalez–Balderas contends that a conspiracy in violation of 21 U.S.C. § 846 is a lesser-included offense of a § 848 continuing criminal enterprise. The government concedes that he is correct. The double jeopardy clause therefore requires that we vacate the conviction and sentence under Count 1 of the indictment.[21]

---

19. Gonzalez–Balderas challenges the two-level adjustment for presence of a firearm and maintains that the enhancement for his role in the conspiracy should have been three levels rather than four.

20. *Williams v. United States,* —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

The conviction and sentence for conspiracy to possess cocaine with intent to distribute under Count 1 are VACATED. The convictions and sentences under Counts 121 and 122 of the indictment are AFFIRMED.

---

21. *United States v. Devine,* 934 F.2d 1325 (5th Cir.1991), *cert. denied,* —— U.S. ——, ——, ——, ——, ——, ——, 112 S.Ct. 349, 911, 952, 954, 1164, 1197, 116 L.Ed.2d 288, 811, 117 L.Ed.2d 120, 121, 411, 437 (1992).