COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Humphreys and Senior Judge Coleman
Argued at Richmond, Virginia


SHAJUAN LEE McRAE

MEMORANDUM OPINION[*] BY

v.    Record No. 0488-00-2        JUDGE SAM W. COLEMAN III
                                  JULY 3, 2001

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

John B. Boatwright, III (Boatwright & Linka,
on brief), for appellant.

Richard B. Smith, Senior Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Shajuan Lee McRae was convicted of possession of a firearm

while in possession of cocaine.  On appeal, McRae contends the

trial court erred by:  (1) striking three prospective jurors for

cause; and (2) concluding that the prosecution did not violate

Batson v. Kentucky, 476 U.S. 79 (1986), by using three of its four

peremptory challenges to remove African-Americans from the jury.

Finding no reversible error, we affirm.

THE STRIKES FOR CAUSE

As part of jury voir dire, the following exchange took place:

> THE COURT:  Now, do any of you know of any
> reason, whatsoever, why you could not hear

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

and adjudge the evidence fairly?  This case should be concluded today, so it will not be a trial where you will be asked to come back tomorrow.  But do you know of any reason whatsoever, why you could not hear and adjudge the evidence fairly?  Any moral, religious reasons, any personal convictions, any reasons, whatsoever?

THE JURORS:  (Hands raised).

THE COURT:  Ms. Chambliss?

JUROR CHAMBLISS:  I have a nephew in jail. I can't sit on it.

THE COURT:  Ms. Chambliss, I'm going to excuse you.  Why don't you have a seat in the courtroom.  Ms. Robinson.

JUROR ROBINSON:  I have a nephew, too.

THE COURT:  And you feel you could not sit on this jury?

JUROR ROBINSON:  Yes.

THE COURT:  All right.  Ms. Robinson, why don't you have a seat in the courtroom.

NOTE:  At this time, Juror Chambliss and Juror Robinson step down from the jury box and have a seat in the courtroom.

THE COURT:  Ms. Otey, you said you know Mr. Solomon?

JUROR OTEY:  Yes.

THE COURT:  Counsel, would you like to question her behind the bench or do you have any objection to the Court excusing her?

MR. BOATWRIGHT:  Yes.

THE COURT:  All right.  Let's question her behind [the bench].  Ms. Otey, why don't you come behind the bench.

-

        NOTE:  At this time, a bench conference is
        held outside the hearing of the jury as
        follows:

BENCH CONFERENCE HELD OUT
OF THE HEARING OF THE JURY

        THE COURT:  Ms. Otey, why don't you stand
        right here so the court reporter can see
        you.  Tell us how you know Mr. Solomon.

        JUROR OTEY:  I know Mr. Solomon by him,
        like, coming to my house.  I haven't seen
        him in a long time.  I know him by him
        coming to my house, because his brother
        live[s] at my house.

        THE COURT:  His brother lives with you?

        JUROR OTEY:  Uh-huh.

        THE COURT:  His brother is a tenant in your
        house?

        JUROR OTEY:  Uh-huh.

        THE COURT:  Why don't you have a seat.

        MR. BOATWRIGHT:  I object to the Court
        excusing her.

        THE COURT: Have a seat in the jury box.

        NOTE:  At this time, Juror Otey returns to
        the jury box.

        MR. BOATWRIGHT:  She said nothing that
        indicated she has any bias in favor of the
        witness.  She just says she knows the man.
        She hasn't seen him in a long time.

        THE COURT:  She also said his brother is her
        tenant, lives with her.

        MR. BOATWRIGHT:  I understand that.

        THE COURT:  We'll note your objection to the
        Court's excusing her on the record.  Is
        there any other reason?

                            -

MR. BOATWRIGHT: I move for a mistrial on that basis.

THE COURT: Request for mistrial denied.

MR. BOATWRIGHT: Will this be a time to take up my objection to the Court excusing the two other jurors?

THE COURT: Yes.

MR. BOATWRIGHT: They just simply don't want to be here. That is not enough to excuse them for cause. I understand how people don't want to be here and don't want to sit in judgment, but unless they say they absolutely can't follow the Court's instructions, which they did not say, it is not a basis to strike them for cause, and I would move the Court to restore them to the panel.

THE COURT: The request is denied. Your exception is noted for the record.

The trial judge then excused juror Otey, after having excused jurors Chambliss and Robinson.

McRae contends on appeal the trial judge abused her discretion by excluding the three jurors who showed no grounds for disqualification for cause, thereby depriving him of his right to an impartial jury.

An accused is constitutionally guaranteed the right to trial by "an impartial jury." U.S. Const. amends. VI, XIV; Va. Const. art. I § 8; see Code § 8.01-358; Rule 3A:14. "Trial courts, as the guardians of this fundamental right, have the duty to procure an impartial jury." Griffin v. Commonwealth, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995).

-

> Trial courts primarily determine whether a venireperson is free from partiality and prejudice <u>through meaningful voir dire</u>. During voir dire, the trial judge must probe the conscience and mental attitude of the prospective jurors to ensure impartiality. It is not uncommon to discover during voir dire that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case. <u>Even though a prospective juror may hold preconceived views, opinions, or misconceptions, the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial</u>.

<u>Id.</u> (citations omitted) (emphases added).

"[W]e review a trial court's decision whether to strike a prospective juror for cause for an abuse of discretion and that ruling will not be disturbed on appeal unless it appears from the record that the trial court's action constitutes manifest error." <u>Cressell v. Commonwealth</u>, 32 Va. App. 744, 755, 531 S.E.2d 1, 6 (2000). "In determining whether a prospective juror should have been excluded for cause, we review the entire <u>voir dire</u>, rather than a single question and answer." <u>Barnabei v. Commonwealth</u>, 252 Va. 161, 173, 477 S.E.2d 270, 277 (1996) (citation omitted). "'The standard to be applied by the trial court in determining whether to retain a venireman on the jury panel is whether his answers during <u>voir dire</u> examination indicate to the court something that would prevent or substantially impair the performance of his duties as a juror in

-

accordance with his instructions and his oath.'"  Moten v.

Commonwealth, 14 Va. App. 956, 958, 420 S.E.2d 250, 251 (1992)

(citations omitted).  The Supreme Court and this Court have

repeatedly emphasized that when reasonable doubt exists whether a

juror possesses the ability to render a fair and impartial service

that doubt must be resolved in favor of the accused.  See Breeden

v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976).

From our review of Virginia's appellate decisions involving

challenges to jurors for cause in non-capital cases, the issue

heretofore has been whether a court improperly seated a biased

juror, not whether a court erroneously or improperly excluded an

unbiased or qualified juror.[1]  Here, however, we are asked to

---

[1] In capital cases, because constitutional considerations
require that the death penalty be administered with fundamental
fairness and due process of law, appellate courts necessarily
must review whether trial courts err by removing for cause
prospective jurors who are inalterably opposed to the death
penalty.  See Wainwright v. Witt, 469 U.S. 412, 424 & n.5 (1985)
(refining Witherspoon procedure for excluding jurors whose view
regarding death penalty affects their ability to follow the law
and instructions); Witherspoon v. Illinois, 391 U.S. 510, 522
(1968) (holding that imposition of death penalty by jury from
which jurors were excluded "simply because they voiced general
objections to the death penalty" violated right to impartial
jury provided to defendant under the 6th and 14th amendments).
     For examples of capital cases that review the propriety of
having struck a qualified juror, see Adams v. Texas, 448 U.S.
38, 45-50 (1980) (erroneous exclusion of juror in capital murder
trial violated 6th and 14th Amendments; states may not execute
sentence of death where even one putative juror has been
excluded merely because of general objection to capital
punishment); Davis v. Georgia, 429 U.S. 122, 123 (1976) (holding
that venireperson is properly excluded only if he or she is
"'irrevocably committed'" against death penalty regardless of
facts and circumstances that might emerge at trial; if a
venireperson is excluded but not "so committed" against the

-

decide the novel question of whether a trial court abused its discretion by removing an otherwise qualified juror in a non-capital case because the court erroneously either determined that the juror was biased or arbitrarily excluded a qualified juror.

McRae asserts that the trial court abused its discretion by excluding the three jurors for cause where no bias was demonstrated and the trial judge granted the challenge for cause merely to exclude a reluctant juror or was being overly cautious by excluding an otherwise qualified juror.  Although the record in the present case may fail to support the trial judge's decision to <u>sua</u> <u>sponte</u> strike for cause venirepersons Chambliss, Robinson or Otey, the only question that we may properly consider as reversible error is whether the trial court abused its discretion in seating an unqualified juror, not whether an otherwise qualified juror was excluded from the jury.

---

death penalty, "any subsequently imposed death penalty cannot stand"); <u>State v. Stallings</u>, 413 S.E.2d 710, 712 (Ga. 1992) (reversing and remanding for resentencing where the trial court erroneously excused a juror who indicated she had some qualms about imposing the death penalty and was leaning toward a life sentence; explaining that further <u>voir</u> <u>dire</u> might have established juror's disqualification by revealing a view on capital punishment that would prevent or impair her from performing her duty and acting in accordance with the instructions and her oath); <u>Durrough v. State</u>, 620 S.W.2d 134, 142 (Tex. Crim. App. 1981) (reversing and remanding where record failed to show excluded juror was so irrevocably opposed to the death penalty she could not follow the law or obey the court's instructions).

-

"A defendant is entitled to fair and impartial jurors, not jurors whom he hopes will be favorable towards his position.  A defendant's rights go to those who serve, not to those who are excused."  State v. Mendoza, 596 N.W.2d 736, 749 (Wis. 1999). The erroneous or improper exclusion for cause by the trial court of a venireperson does not violate a defendant's rights in a non-capital case under the United States Constitution as long as the jury that hears the case is impartial.  See United States v. Gonzalez-Balderas, 11 F.3d 1218, 1221-22 (5th Cir. 1994) (holding that "improper removal of a member of the venire is not grounds for reversal in a non-capital case unless the jurors who actually sat were not impartial within the meaning of the sixth amendment"); Shettel v. United States, 113 F.2d 34, 36 (D.C. Cir. 1940) (holding that the Constitution guarantees trial by an impartial jury and "appellant was not in any way prejudiced by the exclusion of these [qualified] persons" from the jury); Jones v. State, 982 S.W.2d 386, 390 (Tex. Crim. App. 1998) (holding that "a defendant has no right that any particular individual serve on the jury.  The defendant's only substantial right is that the jurors who do serve be qualified.  The defendant's rights go to those who serve, not to those who are excused.").  Because the protections afforded under Virginia's Constitution "are co-extensive with those in the United States Constitution," Bennefield v. Commonwealth, 21 Va. App. 729, 739-40, 467 S.E.2d 306, 311 (1996), a trial court's exclusion

-

for cause of an otherwise qualified venireperson likewise does not affect one's right under Virginia's Constitution in a non-capital case so long as the seated jury was fair and impartial.

Although McRae contends the trial court's actions deprived him "of his right to an impartial jury," he does not complain that the jury that heard his case was biased or not impartial. He puts forth no evidence or argument that the jury selected was not impartial. Therefore, while the trial judge may have acted precipitously by excluding for cause one or more of the prospective jurors, nothing in the record suggests that the jury selected was not impartial or not qualified. Accordingly, the trial judge's excluding the jurors was not reversible error.

### THE BATSON CHALLENGES

After the court seated twenty potential jurors free from exception, the parties exercised their peremptory strikes, after which appellant's attorney made the following motion:

> MR. BOATWRIGHT: Judge, pursuant to Batson v. Kentucky, I'd ask the Court to require the Commonwealth to provide race neutral reasons for exclusion of jurors presently in position No. 7, Lauretta Harris, a black female; No. 20, Eddie Miles, a black male; and Kenneth Mosby, Juror No. 5, also a black male.
> Mr. Mosby was the only one of those people who gave any kind of response to any of the questions asked by anybody. He said, A, that he had been charged with something, and, B, that he had previously served on a civil jury. The other two, Ms. Harris and

-

Mr. Miles, gave no responses, during voir
dire or otherwise.

Before the trial judge could respond, the prosecutor

volunteered race-neutral reasons for striking the three jurors.

After being provided race-neutral explanations, the trial judge

ruled as follows:

> The Court will rule on the motion as
> follows. First of all, the Court does not
> believe a prima facie case was established
> under Batson. A prima facie case is
> established by exclusion plus other facts
> and circumstances. Even if a prima facie
> case has been established, the party making
> the strikes has stated race neutral reasons
> for the strikes, so the motion will be
> denied.

A prospective juror may not be peremptorily removed from a

jury panel solely on the basis of race. Batson, 476 U.S. at 89.

In order to properly raise a challenge to a Batson violation

> [a] defendant must first establish a prima
> facie showing that the peremptory strike was
> made on the basis of race. At that point,
> the burden shifts to the prosecution to
> produce explanations for striking the juror
> which are race-neutral. Even if
> race-neutral, the reasons may be challenged
> by the defendant as pretextual. Finally,
> the trial court must decide whether the
> defendant has carried his burden of proving
> purposeful discrimination by the prosecutor
> in selecting the jury panel.

Buck v. Commonwealth, 247 Va. 449, 450-51, 443 S.E.2d 414, 415

(1994).

To establish a prima facie case of purposeful

discrimination under Batson,

-

> "the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."

Johnson v. Commonwealth, 259 Va. 654, 674, 529 S.E.2d 769, 780 (2000) (quoting Batson, 476 U.S. at 96).

> The defendant has the burden of producing a record that supports a prima facie case of purposeful discrimination. The fact that the prosecution has excluded African-Americans by using peremptory strikes does not itself establish such a prima facie case under Batson. A defendant also must identify facts and circumstances that raise an inference that potential jurors were excluded based on their race. The composition of the jury that ultimately is sworn is a relevant consideration in reviewing a Batson challenge.

Id. at 674, 529 S.E.2d at 780-81 (citations omitted) (emphasis added).

Because the record in Johnson contained details about the jury's racial composition, the Supreme Court was able to rely, in part, on the fact that "[t]he jury selected in this case was comprised overwhelmingly of African-Americans" when it affirmed the trial court's ruling that the appellant failed to establish

-

a prima facie case of purposeful discrimination.  Id. at 674, 529 S.E.2d at 781.

Here, appellant failed to produce a complete record to support a prima facie case of purposeful discrimination. Although the record shows that the Commonwealth used three of its four peremptory strikes to remove African-American jurors, the record fails to show the racial composition of the venire or of the jury sworn, which may, for all we know, have all been African-American.  Without such information, appellant has failed to establish a prima facie case of purposeful discrimination.  Cf. Faison v. Hudson, 243 Va. 397, 402, 417 S.E.2d 305, 308 (1992) (finding in civil trial that plaintiff presented sufficient facts to establish prima facie case of discrimination where record showed that the defendant struck from the venire the only African-American); Linsey v. Commonwealth, 17 Va. App. 47, 50, 435 S.E.2d 153, 154 (1993) (finding prima facie case established where stricken juror was only African-American on the venire of twenty, where that juror did not respond to any questions and where all five white members of the venire who did not respond were not stricken).

Because appellant failed to provide a record of the racial composition of the venire or the jury and because he failed to identify other facts and circumstances sufficient to raise an inference that potential jurors were excluded based on race, the

-

trial court did not err in finding that appellant failed to establish a _prima_ _facie_ case of purposeful discrimination.

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>