**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-4714**

———————

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

     v.

LEE BENTLEY FARKAS,

             Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Leonie M. Brinkema, District Judge.  (1:10-cr-00200-LMB-1)

———————

Argued:  May 16, 2012                    Decided:  June 20, 2012

———————

Before MOTZ, DAVIS, and WYNN, Circuit Judges.

———————

Affirmed by unpublished opinion. Judge Davis wrote the opinion, in which Judge Motz and Judge Wynn joined.

———————

**ARGUED:** David M. Coorssen, DAVID M. COORSSEN, ATTORNEY AT LAW, Louisville, Kentucky, for Appellant.  Kirby Ann Heller, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Stuart A. Scherer, Louisville, Kentucky, for Appellant.  Neil H. MacBride, United States Attorney, Charles F. Connolly, Paul J. Nathanson, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Lanny A. Breuer, Assistant Attorney General, John D. Buretta, Acting Assistant Attorney General, Patrick F. Stokes, Deputy

Chief, Robert A. Zink, Trial Attorney, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Circuit Judge:

Appellant Lee Bentley Farkas challenges his convictions for bank, wire and securities fraud, and conspiracy to commit the same, arising from a multibillion dollar scheme to hide the financial difficulties of Taylor, Bean, & Whitaker Mortgage Corp. ("TBW") during his tenure as chairman and principal owner of TBW. Farkas contends that the district court violated his Sixth Amendment rights in four distinct ways: (1) denying his motion to transfer venue; (2) denying his fourth motion for a continuance; (3) appointing counsel to represent him; and (4) limiting his right to cross-examine a Government witness. In addition, Farkas contends that the district court violated his Fifth Amendment rights when it (1) declined to give an instruction defining "beyond a reasonable doubt" and (2) instructed the jury that its "sole interest is to seek the truth from the evidence," J.A. 2042. Finally, apart from the challenge to his convictions, Farkas contends that the district court committed clear error in adjudicating the Government's motion for an order of forfeiture. Having carefully considered Farkas's contentions in light of the record presented to us, we discern no reversible error. Accordingly, for the reasons that follow, we affirm the judgment.

I.

A.

The Government presented evidence at trial that amply justified the jury in finding the following facts. Farkas and his co-conspirators engaged in a multi-stage fraud scheme between 2002 and 2009, while Farkas was chairman and principal owner of TBW, a mortgage lending company based in Ocala, Florida and with offices in seven states. TBW originated and serviced residential mortgage loans and sold them, either individually, pooled, or as part of a mortgage-backed security, to third-party investors and commercial financial institutions in the secondary mortgage market. To fund the loans it originated, TBW relied on advances from various warehouse banks and purchase facilities, which were to be repaid from the proceeds of TBW's sales to investors. TBW received short-term, secured funding from Colonial Bank, a subsidiary of Alabama-based Colonial BancGroup, and in particular Colonial Bank's Mortgage Warehouse Lending Division ("MWLD").

Between 2002 and 2003, Farkas and his co-conspirators engaged in a scheme to disguise overdrafts of TBW's master advance account held at Colonial Bank by "sweeping" funds from TBW's investor funding account, which was also held at Colonial Bank and represented proceeds from sales of loans to investors in the secondary market, into and out of the master advance

4

account. As a result of this sweeping scheme, Colonial Bank's daily reports did not show the overdrafts. Farkas's co-conspirators included Ray Bowman, president of TBW, Cathie Kissick, head of the MWLD at Colonial Bank, and Teresa Kelly, a MWLD operations supervisor.

As the deficit in TBW's assets with Colonial Bank grew to well over $100 million, Farkas and his co-conspirators initiated more sophisticated schemes, including "Plan B." Under Plan B, they caused TBW to sell sham mortgage loans and pools of loans to Colonial Bank. These loans and pools of loans either did not exist or had already been sold to investors; accordingly, they were worthless or had significantly impaired value. Colonial Bank held approximately $250 million in Plan B individual loans on its books by mid-2005, and by August 2009, Colonial Bank held approximately $500 million in Plan B pools of loans. As a result, Colonial BancGroup significantly overstated the value of its assets in its quarterly and annual reports to the United States Securities and Exchange Commission.

Relatedly, in furtherance of the scheme, Farkas created Ocala Funding, a subsidiary of TBW that issued commercial paper to investors in return for cash, which in turn was used to fund mortgage loans at TBW. Farkas and his co-conspirators overstated by hundreds of millions of dollars the actual value of the collateral backing the commercial paper and underreported Ocala

Funding's liabilities, ultimately resulting in a shortfall of more than $1.5 billion. In the final stage of the scheme, Farkas and his co-conspirators attempted to fraudulently obtain $553 million for Colonial BancGroup, Colonial Bank's holding company, from the Troubled Asset Relief Program, a program that Congress created to rescue distressed financial institutions.

## B.

On June 10, 2010, a grand jury in the Eastern District of Virginia returned a sixteen-count indictment against Farkas including, among other charges, bank and wire fraud in violation of 18 U.S.C. §§ 1344 and 1343, respectively, and conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 1349. The indictment included a forfeiture provision and provided notice that, if necessary, the Government would seek forfeiture of substitute assets pursuant to 21 U.S.C. § 853(p). The following day, the district court entered a restraining order enjoining the sale or transfer of Farkas's assets pursuant to 21 U.S.C. § 853(e)(1)(A).

At his arraignment on July 2, 2010, Farkas appeared with Gerald H. Houlihan, Esq., a Florida-based attorney, and Jeffrey Harris, Esq., his would-be local counsel, neither of whom had entered an appearance or been retained. Houlihan explained that, as Farkas's assets had been frozen and coverage under the TBW Directors & Officers insurance policy ("D&O policy") was in

6

dispute, Farkas hoped to negotiate a carve-out from seized assets for attorneys' fees. The district court allowed Houlihan and Harris to enter a limited appearance, arraigned Farkas, accepted his Speedy Trial Act waiver, and set a trial date of November 1, 2010. In mid-July, Houlihan and Harris notified the court that a bankruptcy hearing concerning the D&O policy was scheduled for July 16, 2010, and that negotiations with the Government regarding the possibility of a carve-out from assets frozen under the restraining order were also ongoing. When Farkas had not resolved his representation issues as of August 10, 2010, the district court appointed William B. Cummings, Esq. to represent him under the Criminal Justice Act, 18 U.S.C. § 3006(A). Farkas objected to the appointment of counsel. The court responded that its appointment of counsel did not foreclose Farkas from retaining counsel, but that "at this point we have to get this case moving." J.A. 84.

On August 26, 2010, Farkas moved to transfer venue to the Middle District of Florida pursuant to Federal Rule of Criminal Procedure 21(b). The Government opposed the motion and the district court denied Farkas's request orally and by written opinion. Farkas also moved for a continuance on four separate occasions. The court granted Farkas's first and second motions,

7

which were unopposed by the Government, but denied his third and fourth requests.[1]

Following a nine-day jury trial, Farkas was found guilty on fourteen counts, including conspiracy to commit bank fraud, wire fraud, and securities fraud, in violation of 18 U.S.C. § 1349 (Count 1); six counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Counts 2-7); four counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts 8-11); and three counts of securities fraud, in violation of 18 U.S.C. §§ 1348 and 2 (Counts 14-16).[2] The district court sentenced Farkas to 30 years of imprisonment, to be followed by three years of supervised release. Following sentencing, the court granted the Government's preliminary motion for forfeiture and ordered Farkas to forfeit $38,541,209, representing the value of property constituting or derived from proceeds he obtained directly or indirectly as a result of his offenses of conviction. The court also held Farkas jointly and severally liable for restitution payments totaling $3,507,743,557. We have jurisdiction over Farkas's timely appeal under 28 U.S.C. § 1291.

---

[1] Farkas's third motion for a continuance was styled as a motion to amend the district court's order granting his second motion for a continuance.

[2] Counts 12 and 13, which both charged wire fraud, were dismissed on the Government's motion during trial.

II.

We begin by addressing Farkas's Sixth Amendment arguments. The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Farkas argues that the district court violated his right to assistance of counsel when it denied his motion for a transfer of venue, denied his fourth motion for a continuance, and appointed counsel over his objection while negotiations bearing on his ability to afford retained counsel were ongoing. Farkas also argues that the district court violated his right to confrontation when it limited his cross-examination of a Government witness. We reject these contentions for the following reasons.

A.

Farkas argues that the district court abused its discretion in denying his motion to transfer venue to the Middle District of Florida. Federal Rule of Criminal Procedure 21(b) provides that the court may transfer a proceeding, upon the defendant's motion, to another district, "for the convenience of the parties and witnesses and in the interest of justice." This court reviews a district court's denial of a motion to transfer venue for abuse of discretion. United States v. Heaps, 39 F.3d 479,

9

482 (4th Cir. 1994), abrogated on other grounds, United States v. Cabrales, 524 U.S. 1 (1998).

In deciding a Rule 21(b) motion to transfer venue, a district court should consider the factors enunciated in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240 (1964), namely, the (1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions in each district; and (10) any other specific element which might affect the transfer. Platt, 376 U.S. at 243-44; see also Heaps, 39 F.3d at 483 (upholding use of Platt factors). No one of these factors is dispositive, and "[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance." United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990).

Having carefully examined the record, we conclude that the district court did not abuse its discretion in allowing this case to proceed in the Eastern District of Virginia. The district court properly considered each of the Platt factors, determined that only the first of the ten non-dispositive factors (location of defendant) weighed in favor of transfer, and accordingly denied the motion. For the reasons stated by the

10

district court in its thorough written opinion, we find that it did not abuse its discretion in applying the Platt factors in the instant case. See United States v. Farkas, No. 1:10cr200 (LMB), 2010 U.S. Dist. LEXIS 100916 (E.D. Va. Sept. 10, 2010). In addition, we note Farkas's concession that "[t]he trial court undertook a thorough analysis of each of the Platt factors." Appellant's Br. at 15.

## B.

Farkas also argues that the district court violated his Sixth Amendment right to assistance of counsel when it denied his fourth motion for a continuance. The denial of a continuance contravenes a defendant's Sixth Amendment right to counsel only when there has been "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (internal quotation marks omitted) (citing Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). To prevail on this issue, Farkas is obliged to show, first, that the district court abused its discretion in refusing to continue the trial, and second, that the ruling "specifically prejudiced" his case. United States v. Hedgepeth, 418 F.3d 411, 423 (4th Cir. 2005) (citations omitted). Farkas has failed to make these showings here.

The district court granted Farkas's initial motion for a continuance filed on August 31, 2010 (continuing the trial from

11

November 1, 2010 to February 22, 2011), as well as his second motion filed on December 6, 2010 (continuing the trial to April 4, 2011), each of which was unopposed. At the hearing on Farkas's second motion for a continuance, the court cautioned the parties that it would grant no additional continuances. Nevertheless, Farkas moved to amend the court's order later the same day on the basis that the new trial date conflicted with defense counsel's law school teaching schedule. The court denied the motion. Several months later, on March 30, 2011, Farkas filed a fourth motion for a continuance requesting a trial date on or after May 30, 2011. He cited the need to review new discovery that had been added to the electronic database created by the Government, as well as "the ongoing invocation of privilege by a number of legal and accounting firms," which he argued prevented the disclosure of potentially exculpatory materials. J.A. 258. The court held a motions hearing, addressed Farkas's discovery production and privilege arguments, and denied the motion in open court. On appeal, Farkas asserts that the "monumental discovery production justified the defense's requests for continuances," Appellant's Br. at 18, but does not reprise his privilege argument.[3]

---

[3] Notably, at the motions hearing Farkas backed away from his discovery production argument and instead emphasized his privilege argument. Defense counsel stated:

(Continued)

12

"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." Ungar, 376 U.S. at 589. Instead, "[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id. In declining to grant a fourth continuance on the basis of the scale of discovery in this case, the district court emphasized that the Government had provided considerable assistance to defense counsel in reviewing documentary discovery production, including instituting an open file policy and holding regular meetings. The court further noted that the case had been continued twice, at least three attorneys represented Farkas, and the Government had provided access to Jencks

---

[M]y concern is that the emphasis – and we may have put too much on it – with regard to the discovery was really not the focus of our motion. There's no question that the government has been very cooperative with us and has provided documents. We've had weekly telephone calls. Our concern has to do with the exercise of privilege by virtue of the TBW and the Colonial Bank both auditors and lawyers refusing to talk to us and providing only limited documents and continuing to assert privilege.

J.A. 291. Defense counsel later reiterated that "our concern is more with privilege than with documents." J.A. 293.

We need not address whether Farkas has waived his discovery production argument, however, as we find that the district court did not abuse its discretion in denying the motion for a continuance.

13

material even earlier than the court's discovery order required. Given its thorough explanation of its reasons for refusing to further delay the trial after having already granted two continuances, the court's denial of Farkas's fourth motion for a continuance cannot be described as "unreasoning and arbitrary." Thus, we find that the denial of a continuance here did not so clearly violate fundamental fairness as to compel a conclusion that it constituted an abuse of discretion. Nor has Farkas plausibly identified any specific prejudice stemming from the district court's denial of a further continuance. Thus, Farkas is not entitled to relief on this ground.

C.

Farkas next contends that the district court violated his Sixth Amendment right to counsel when it appointed counsel to represent him despite his ongoing negotiations as to his ability to retain private counsel. We have recognized that "[a]n essential element of the Sixth Amendment's protection of right to counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing." United States v. Gallop, 838 F.2d 105, 107-08 (4th Cir. 1988) (citations omitted). We have also noted, however, that "the right to counsel of a defendant's choosing is not absolute . . . . Such right must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to

14

control the administration of justice." Id. (citations omitted). Like Farkas's other Sixth Amendment claims, we review the district court's decision to appoint counsel for abuse of discretion.

While Farkas acknowledges that "[a] trial court maintains 'wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar,'" Appellant's Br. at 23 (citing United States v. Gonzalez-Lopez, 548 U.S. 140, 152 (2006)), he argues that, in this case, "[f]undamental fairness and [his] Sixth Amendment right to counsel of his choice far outweighed the trial court's insistence on moving the case along at the pace it did," id. at 25. We disagree. As the Government notes, Farkas apparently contends that the district court should have held the criminal proceedings in abeyance until the bankruptcy court and the TBW insurance company determined whether the D&O policy would be available for Farkas's use. In declining to take this course of action, the district court appropriately weighed speedy trial concerns in the context of the uncertain circumstances surrounding Farkas's ability to retain preferred counsel, and further indicated that appointment of counsel would not impede Farkas's retention of counsel of his choosing if and when funds became available for his defense. Indeed, as Farkas acknowledges, he was represented by retained counsel as of

15

December 2010, almost a full year prior to commencement of his trial. As the Supreme Court has noted, the Sixth Amendment does not provide an absolute right, but instead guarantees a defendant a "fair opportunity" to secure counsel of his own choice to represent him at trial on criminal charges. See Powell v. Alabama, 287 U.S. 45, 53 (1932). It is clear on the record before us that Farkas was not denied a fair opportunity to secure counsel of his choice as a result of the district court's appointment of counsel. Thus, we find that the district court did not abuse its discretion.

D.

Farkas's final Sixth Amendment claim is that the district court infringed his right to confront witnesses against him when it limited his cross-examination of Neil Luria, managing director of Navigant Consulting, Inc. ("Navigant") and chief restructuring officer for TBW during bankruptcy. Luria's testimony on direct examination primarily concerned his analysis of the TBW bankruptcy estate. On cross-examination, Farkas sought to question Luria regarding fees Navigant received for managing the estate. The Government raised a relevance objection, which the district court sustained. While we typically review a district court's limitations on a defendant's cross-examination of a prosecution witness for abuse of discretion, United States v. Smith, 451 F.3d 209, 220 (4th Cir.

16

2006), where the defendant raises an alleged constitutional violation for the first time on appeal, as in this case, we apply plain error review. See Fed. R. Crim. P. 52(b); United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005) (citations omitted).

"In reviewing for plain error, our initial inquiry is whether an error occurred." Hughes, 401 F.3d at 547 (citing United States v. Hastings, 134 F.3d 235, 239 (4th Cir. 1998)). "Next, the error must be plain." Id. (citing Hastings, 134 F.3d at 239). "Third, [Farkas] must establish that the error affected his substantial rights, i.e., that it was prejudicial." Id. at 548 (citing Hastings, 134 F.3d at 240). Fourth, we must determine whether our failure to reverse the judgment of the district court would amount to a miscarriage of justice. Id. at 555 (citing Hastings, 134 F.3d at 244). Farkas concedes that "[t]he third and fourth Hughes prongs, requiring a showing of prejudice and a miscarriage of justice, are virtually impossible to establish on the record, especially given trial counsel's failure to further develop this issue." Appellant's Br. at 35. Farkas urges us to overlook this fatal shortcoming, but we find that it forecloses his Sixth Amendment argument.

We further note that, irrespective of Farkas's concession that he is unable to establish prejudice or a miscarriage of justice, he has failed to demonstrate that the district court

17

erred in the first instance. Although "cross-examination is an important element of the right of confrontation," United States v. McMillon, 14 F.3d 948, 956 (4th Cir. 1994) (citing Smith v. Illinois, 390 U.S. 129 (1968)), "the trial court is vested with broad discretion to control the mode of interrogation and presentation of evidence to insure that witnesses are treated fairly and the search for truth is not impaired by presentation of extraneous, prejudicial or confusing material," United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir. 1988) (citing Fed. R. Evid. 611)). "Under Federal Rule of Evidence 611(b), 'cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.'" McMillon, 14 F.3d at 956.

Farkas argues that the line of questioning at issue was relevant to Luria's credibility because he sought to demonstrate that Luria and Navigant had a pecuniary interest in the outcome of the trial. The record does not support this characterization of the questioning, however, and suggests instead that Farkas sought to show that Luria's salary and other administrative costs connected to the bankruptcy reduced the amount of TBW assets available to pay its creditors. The district court stated in sustaining the Government's relevance objection that "it is completely irrelevant to this case as to whether there's a $50 billion hole or a $5 billion hole. It could be relevant to the

18

forfeiture issue, which is for down the road, but I don't want to waste the jury's time . . . . It's a fraud case, and quite frankly, you can have fraud without a big loss." J.A. 1693-95. Defense counsel responded, "Yes ma'am. I was just concerned about the prejudice with those big numbers." J.A. 1695. Farkas made no attempt to proffer that he sought to show bias; on the contrary, he suggested that the large disparity between TBW's assets and its liabilities to creditors in bankruptcy was prejudicial. The district court found that it was not. We decline on appeal to find error based on Farkas's post hoc recasting of the evidentiary basis for his cross-examination of Luria with respect to fees Navigant received for managing the TBW bankruptcy estate. Thus, we find that the district court did not err in limiting Farkas's cross-examination of Luria.

III.

Farkas next advances two intertwined Fifth Amendment due process claims. He argues that the district court erred when it declined to give a jury instruction defining "beyond a reasonable doubt," but instructed the jury that its "sole interest is to seek the truth." Appellant's Br. at 26 (citing J.A. 2042). We review a district court's refusal to give a specific jury instruction for abuse of discretion. United States v. Herder, 594 F.3d 352, 359 (4th Cir.), cert. denied, 130 S.

19

Ct. 3440 (2010). "We review the accuracy and adequacy of jury instructions de novo," United States v. McIver, 470 F.3d 550, 557-58 (4th Cir. 2006) (citing United States v. Scott, 424 F.3d 431, 434 (4th Cir. 2005)), and will not reverse a conviction so long as "the instructions, taken as a whole, adequately state the controlling law," id. (citing United States v. Wills, 346 F.3d 476, 492 (4th Cir. 2003)). For the reasons that follow, we find that the jury instructions in this case were proper in all respects.

Farkas requested a jury instruction defining "beyond a reasonable doubt" as "proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs." J.A. 1859-60. The court included an instruction stating that "the burden of proving guilt beyond a reasonable doubt is always with the government," J.A. 2002, but declined to adopt Farkas's proposed definition of "beyond a reasonable doubt." Farkas objected at the charging conference to the court's refusal to give this particular instruction. As Farkas concedes on appeal, however, this court has repeatedly held that a trial court is not required to define "beyond a reasonable doubt" for the jury. See, e.g., United States v. Walton, 207 F.3d 694, 698 (4th Cir. 2000) (en banc) ("[A]lthough the district court may define reasonable doubt to a jury . . . the district court is not

20

required to do so."); United States v. Hornsby, 666 F.3d 296 (4th Cir. 2012) ("Not requiring such an instruction is based on this Circuit's belief that attempting to explain the words 'beyond a reasonable doubt' is more dangerous than leaving a jury to wrestle with only the words themselves."). Thus, the district court did not abuse its discretion in declining to give Farkas's requested jury instruction.

Farkas also argues that the district court erred in instructing the jury that, as part of its duty to deliberate, the jury's "sole interest is to seek the truth" (hereafter the "seek-the-truth instruction").[4] Farkas objected to the seek-the-truth instruction at the charging conference and renewed his objection at trial. On appeal, he argues that the seek-the-truth instruction, in combination with the court's refusal to define "beyond a reasonable doubt," improperly diluted the Government's burden of proof.

Farkas relies on United States v. Gonzalez-Balderas, 11 F.3d 1218 (5th Cir. 1994), in which the Fifth Circuit considered a jury instruction similar to the seek-the-truth instruction and

---

[4] In the portion of the jury charge describing the duty to deliberate, the district court instructed the jury to "[r]emember at all times that you are not partisans. You are judges — judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial." J.A. 2042. Notably, Farkas initially requested the seek-the-truth instruction, but later withdrew his request.

opined that "[a]s an abstract concept, 'seeking the truth' suggests determining whose version of events is more likely true, the government's or the defendant's, and thereby intimates a preponderance of the evidence standard." Id. at 1223. The court opined that "[s]uch an instruction would be error if used in the explanation of proof beyond a reasonable doubt," but held that the instruction in that case was not erroneous because the trial court had defined reasonable doubt. Id. The court reasoned that "[t]here is no reasonable likelihood that the jury inferred that the single reference at the end of the charge to 'seeking the truth,' rendered as it was in the context of an admonition 'not to give up your honest beliefs,' modified the reasonable doubt burden of proof." Id.

As in Gonzalez-Balderas, the seek-the-truth instruction at issue here was presented at the end of the jury charge in the context of the court's explanation of the jury's duty to deliberate. In addition to instructing the jury on the Government's burden to prove its case beyond a reasonable doubt, the district court referred to the reasonable doubt standard on at least twenty-six separate occasions in the jury instructions. "To determine whether jury instructions require reversal . . . we assess the instructions as a whole and view them in context." United States v. Hsu, 364 F.3d 192, 204 (4th Cir. 2004). In light of the district court's emphasis on the reasonable doubt

22

standard in the jury instructions taken as a whole, we cannot conclude that the single seek-the-truth reference, which the court made in the course of admonishing individual jurors not to surrender their honest convictions, diluted the Government's burden, or otherwise amounted to error.

IV.

Apart from the above challenges to his convictions, Farkas asserts that factual error infects the district court's forfeiture order. Specifically, he argues that the district court clearly erred in finding that "TBW would have failed 'but for' the [fraud] schemes," thereby rendering certain funds identified by the Government as forfeitable indirect proceeds of his crimes. Appellant's Br. at 37. Whether TBW would have been insolvent but for the fraud schemes is a question of fact. We review a district court's findings of fact as to forfeitability for clear error. Herder, 594 F.3d at 363-64.

Farkas is subject to mandatory forfeiture due to his convictions for bank and wire fraud under 18 U.S.C. §§ 1344 and 1343, and for conspiracy to commit these offenses. Federal Rule of Criminal Procedure 32.2(b)(1) provides for entry of a preliminary order of forfeiture upon the return of a guilty verdict if the Government proves the requisite nexus between the identified funds and the offenses of conviction by a

23

preponderance of the evidence. See Libretti v. United States, 516 U.S. 29 (1995); United States v. Cherry, 330 F.3d 658, 669-70 (4th Cir. 2003). Following the jury's guilty verdict in this case, the Government filed a preliminary motion for forfeiture and forfeiture of substitute assets pursuant to 18 U.S.C. §§ 982(a)(2) and 981(a)(1)(C). Section 982(a)(2) requires the forfeiture of "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of" certain enumerated offenses, including bank and wire fraud affecting a financial institution, and conspiracy to commit these offenses. Section 981(a)(1)(C) authorizes the civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" certain enumerated offenses, such as bank and wire fraud.[5]

The district court held a hearing, granted the Government's motion in open court and issued an Order requiring Farkas "to forfeit a money judgment in the amount of $38,541,209.69 as the value of the property constituting or derived from proceeds he obtained directly or indirectly as a result of his fraudulent activities." United States v. Farkas, No. 1:10cr200 (LMB), 2011

---

[5] The provisions of § 981(a)(1)(C) are applicable to this case pursuant to 28 U.S.C. § 2461(c), which allows criminal forfeiture where civil forfeiture is authorized.

U.S. Dist. LEXIS 124001, at *1 (E.D. Va. Oct. 26, 2011) (citation and internal quotation marks omitted).

In a written opinion explaining its order, the district court identified four sources of forfeitable funds: (1) $15,000,000 paid to TBW for an amount due on Farkas's shareholder account; (2) $8,394,459.67 paid to or for the benefit of Farkas from his shareholder account; (3) $7,330,500 in fraudulent loans originated through TBW (referred to by the Government and the district court as "Lee loans"); and (4) $11,474,637.80 transferred from TBW for the benefit of Farkas's general partnership, 3201 Partnership. Id. at *5-6. The court then considered whether the Government had established the requisite nexus between each category of funds and the offenses of conviction. Id. at *6-19. The court first determined that the $15 million applied to Farkas's due-from-shareholder account and the $7,330,500 in "Lee loans" were forfeitable as direct proceeds of Farkas's scheme. Id. at *14-15. Farkas does not challenge the forfeitability of these funds on appeal.

The court then considered whether the Government had established the requisite nexus with respect to the funds in the due-from-shareholder and due-from-3201 Partnership accounts. Id. at *5-6. Given the Government's theory that these funds constitute proceeds of Farkas's crimes, the district court applied the "but for" nexus test first articulated by the

25

Seventh Circuit in United States v. Horak, 833 F.2d 1235, 1242-43 (7th Cir. 1987), and since applied by a number of other courts, see United States v. DeFries, 129 F.3d 1293, 1313 (D.C. Cir. 1997); United States v. Nicolo, 597 F. Supp. 2d 342, 346 (W.D.N.Y. 2009), aff'd, 421 F. App'x 57 (2d Cir. 2011); United States v. Ivanchukov, 405 F. Supp. 2d 708, 712 (E.D. Va. 2005); United States v. Benyo, 384 F. Supp. 2d 909, 914 (E.D. Va. 2005). Pursuant to this test, funds are considered proceeds and therefore deemed forfeitable if "a person would not have [the funds] but for the criminal offense." Nicolo, 597 F. Supp. 2d at 346 (emphasis added) (citation and internal quotation marks omitted).

Applying the "but for" nexus test, the district court held that "[t]he nexus requirement is satisfied by tracing [Farkas's] fraud to the continued viability of TBW to [his] access to the funds sought to be forfeited, demonstrating he obtained such funds indirectly as a result of his crime." Farkas, 2011 U.S. Dist. LEXIS 124001, at *18-19. The court reasoned that "the funds defendant obtained from TBW through the due-from-shareholder and due-from-3201 Partnership accounts would not have been available to him but for his fraud, because TBW would not have remained in business in the absence of the bank and wire fraud scheme." Id. at *17. The court similarly stated, "TBW was only able to continue its business activities due to the

26

ongoing fraud." Id. Farkas challenges only this finding of fact on appeal, which we review for clear error. See Herder, 594 F.3d at 363-64.

Having reviewed the record, we conclude that the district court did not clearly err in finding that TBW remained solvent from 2002 to 2009 only as a result of Farkas's fraudulent conduct. The district court reasoned that "[t]he evidence produced at trial amply demonstrates that TBW was only able to continue its business activities due to the ongoing fraud." Farkas, 2011 U.S. Dist. LEXIS 124001, at *17 (citing J.A. 2093-95) (summarizing trial evidence, including testimony of Ray Bowman, Cathie Kissick, Teresa Kelly, and Desiree Brown, as well as summary charts admitted at trial through witness Ray Peroutka). The court's reliance on the trial record is proper under Federal Rule of Criminal Procedure 32.2(b)(1)(B), which provides that a sentencing court may base its forfeiture determination "on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."

Farkas argues that "[the] evidence cited by the trial court and the government was directly controverted not only by other trial testimony, but by the averments in the Indictment, and the actual financial documentary evidence at trial – as admitted by

27

the government." Appellant's Br. at 37 (footnotes omitted). The Government correctly responds that the indictment is not evidence, reviews trial testimony supporting the court's finding that TBW would have been insolvent but for the schemes, and refutes Farkas's claims that this evidence was controverted by testimony and financial documents. Having reviewed the record, including the testimony referenced by the district court, we conclude that the district court did not clearly err in finding that TBW would have been insolvent during the fraud period "but for" Farkas's fraud schemes. Therefore, we affirm the district court's order of forfeiture.

V.

For the reasons set forth, the judgment is

AFFIRMED.

28