602 S.E.2d 753

**Edward HUGGLER, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 25867.**

Supreme Court of South Carolina.

Submitted June 23, 2004.

Decided Sept. 7, 2004.

Rehearing Denied Oct. 6, 2004.

628

Attorney General, Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Chief, Capital and Collateral Litigation Donald J. Zelenka, Assistant Deputy Attorney General Allen Bullard, and Assistant Attorney General David Spencer, all of Columbia, for Petitioner.

Assistant Appellate Defender Robert M. Pachak, of Columbia, for Respondent.

Chief Justice TOAL:

Edward Huggler (Respondent) was convicted of two counts of criminal sexual conduct with a minor and sentenced to concurrent sentences of nine years for each count.[1]  Respondent appealed and the court of appeals dismissed the case. *State v. Huggler*, 98–UP–492 (S.C. Ct.App. filed November 9, 1998).  Respondent applied for post-conviction relief (PCR). After a hearing, the PCR judge found that trial counsel was ineffective for (1) failing to object to the admission of written statements given by the victims to the police, describing the sexual abuse and (2) failing to conduct a meaningful cross-examination of the testifying victims.  Accordingly, the PCR judge granted a new trial.  We granted the State's petition for certiorari and now reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Mother [2] invited 33–year–old Edward Huggler (Respondent) to live with her and her family in order to help out with transportation and childcare.  Respondent was a friend of Mother's brother and, at the time, Respondent had no place to live.  Also living with Mother were her mother, her husband, 14–year–old daughter Jane, 10–year–old son John, and 12–year–old stepdaughter Jill.

---

1. Before trial, defense counsel negotiated a plea, which allowed Respondent to plead to two counts of assault and battery of a high and aggravated nature.  Respondent decided not to plead guilty to this lesser charge, and the trial proceeded as a criminal sexual conduct case.

2. Given the sensitive nature of this matter, we have chosen not to disclose Mother's name and to use pseudonyms for the minors' names.

One afternoon, when Respondent was watching the children, the children, Respondent, and Jane's friend Lisa[3] began to play a game of "truth or dare." Although the game began with innocent dares, the dares eventually became sexual in nature. Lisa testified that Jane "sucked [Respondent's] private part," and then Jane dared Lisa to do the same. Lisa declined and then Jane dared Jill to do it, and she did. Lisa also testified that "[Respondent] licked Jane's private part."

Jane also testified as to what happened during the game. Jane testified that the game first became sexual with dares including kisses on the cheek and french kissing. Later, the dares involved oral sex and were carried out in the bathroom, with all the children present. After one of the "rounds" in the bathroom, Respondent and the children returned to the living room, and Respondent asked Jill "to do something about a man in a boat." Respondent then began masturbating himself, and Jill masturbated herself as well.

John, Jane's 10–year–old brother, testified that Respondent dared John to "moon" Lisa, and John did so. He also testified that Respondent "made Jane and Jill suck [Respondent's] private parts." Finally, John testified that he did not engage in sexual activity with Respondent.

Lastly, Jill, who is John and Jane's stepsister and who lived with them at the time, testified that the game went from dares of kissing to "eating each other out." She also testified that Respondent bit her breast.

The "game" ended when Mother returned home. The front door was locked, so Mother knocked on the window, asking "Why can't I get in?" The children did not tell Mother why the door was locked or about what had happened while she was away. Soon thereafter, Respondent moved out, and eventually the children told Mother about the sexual activity with Respondent. Mother contacted the police.

The police took written statements from all three children.[4] In their written statements, the children detailed sexual acts

---

3. Lisa was 13–years old at the time of trial and was either 12 or 13–years old at the time the alleged incident occurred.

4. The police did not take a statement from Lisa, Jane's friend who was present during the game, but who apparently stopped participating after she kissed Respondent.

that they engaged in with Respondent. During trial, each of these written statements was entered into evidence, and defense counsel affirmatively stated, each time, that he did not object to the statements' admission. In addition, defense counsel did not cross-examine John or Jill.[5] Counsel did, however, cross-examine Lisa and Jane.

After the State finished presenting its case, defense counsel announced that he was not presenting any witnesses, including Respondent, and requested thirty minutes—instead of fifteen minutes, as the judge offered—to give his closing argument. In closing, defense counsel presented a chart outlining the inconsistencies between the children's live testimonies and their written statements. In addition, he argued that the State failed to adequately investigate the case. Finally, he argued that the children made up the allegations to get out of trouble for smoking cigarettes.

The jury found Respondent guilty on two counts of criminal sexual conduct with a minor, and he was sentenced to nine years imprisonment for each count, to be served concurrently. After his appeal was dismissed, Respondent applied for PCR, and on October 17, 2000, a hearing was held. Defense counsel did not attend the hearing.[6] Although the PCR judge left the record open so that defense counsel could be deposed at a later date, defense counsel was never located, and his deposition was never taken.

At the hearing, PCR counsel argued that defense counsel "fell below the standard" by allowing the children's written statements to be admitted into evidence without adequately cross-examining the children when they were on the witness

---

5. Again, John was 10-years old at the time, and in both his testimony and his written statements, he did not allege that Respondent touched him. And although defense counsel did not cross-examine Jill, he did attack her credibility by having the State explain, on the record, that Jill had accused someone else of criminal sexual conduct in the past and that the case had been dismissed.

6. By order dated August 13, 1999, this Court placed defense counsel on incapacity inactive status. *In re Banks*, 336 S.C. 334, 520 S.E.2d 316 (1999). A year and a half later, this Court disbarred counsel for engaging in check kiting, improperly converting funds, and violating record keeping requirements. *In re Banks*, 344 S.C. 17, 19–20, 542 S.E.2d 721, 722 (2001).

stand. PCR counsel further argued that the written statements improperly bolstered the children's testimony on direct. If it were not for this "fatal flaw," PCR counsel argued, there was "a reasonable possibility that the jury could have reached a different verdict had the case been tried correctly."

The PCR judge agreed and granted relief based, in part, on the following rationale:

This Court has great concerns that [Respondent's] attorney agreed or otherwise did not speak against the introduction of the three statements. Normally statements of witnesses are not allowed into evidence, they not being confessions of the [Respondent]. Also, normally juries have to decide verdicts from their oral remembrance, not a writing that bolsters one side.

Moreover, the PCR judge stated:

To forego cross-examination of any witness and let the same witness' statement be admitted into evidence is not effective representation. To challenge credibility in closing argument without any cross-examination to establish inconsistencies is not effective representation and not trial strategy.

This Court granted the State's petition for certiorari, and the State now raises the following issue for review:

Did the PCR judge err in finding counsel ineffective?

### Law/Analysis

#### Standard of Review

This Court gives great deference to the PCR courts findings of fact and conclusions of law. *Caprood v. State*, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000) (citing *McCray v. State*, 317 S.C. 557, 455 S.E.2d 686 (1995)). On review, a PCR judge's findings will be upheld if there is any evidence of probative value sufficient to support them. *Cherry v. State*, 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989). If no probative evidence exists to support the findings, this Court will reverse. *Pierce v. State*, 338 S.C. 139, 144, 526 S.E.2d 222, 225 (2000) (citing *Holland v. State*, 322 S.C. 111, 470 S.E.2d 378 (1996)).

## DISCUSSION

■ The State argues that the PCR court erred in finding counsel ineffective. We agree.

To establish a claim that counsel was ineffective, a PCR applicant must show that (1) counsels representation fell below an objective standard of reasonableness and (2) but for counsels errors, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Johnson v. State,* 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

When reviewing a counsel's performance, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Consequently, courts apply a "highly deferential" standard of review. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Counsel may avoid a finding of ineffectiveness if he articulates a valid reason for using a certain strategy. *Ingle v. State,* 348 S.C. 467, 470, 560 S.E.2d 401, 402 (2002) (citations omitted). Counsel's strategy will be reviewed under "an objective standard of reasonableness." *Id.*

In the present case, the PCR judge's finding that defense counsel rendered ineffective assistance was based on two grounds: (1) defense counsel erred by not objecting to, or otherwise speaking out against, the admission of the witnesses' written statements that were taken by the police during the investigation; and (2) defense counsel failed to adequately cross-examine the victims. In sum, the PCR judge had "great concern" that counsel allowed the written statements to be admitted and found that it was not "trial strategy" for defense counsel to argue inconsistencies between the written statements and the testimonies during closing; instead, such inconsistencies should have been highlighted during cross-examination.[7]

---

7. We note that defense counsel did not appear at the PCR hearing, was subsequently unreachable for deposition, and thus has never testified as to the trial strategy employed in Respondent's case.

First, as to counsel's failure to object to the admission of the victims' written statements, we find that even though the statements likely constituted inadmissible hearsay and were improperly admitted, the outcome of Respondent's case was not prejudiced by their admission.

The rule against hearsay prohibits the admission of out-of-court statements used to prove the truth of the matter asserted unless an exception to the rule applies. *Dawkins v. State*, 346 S.C. 151, 156, 551 S.E.2d 260, 262 (2001) (citing *Jolly v. State*, 314 S.C. 17, 443 S.E.2d 566 (1994)). A well-settled exception in criminal sexual conduct cases allows the admission of limited corroborative testimony. *Id.* When the victim testifies and is subject to cross-examination, the victim's prior consistent statement is admissible and is *not* hearsay, provided the statement is limited to the time and place of the incident. Rule 801(d)(1)(D), SCRE; *State v. Jeffcoat*, 350 S.C. 392, 395–396, 565 S.E.2d 321, 323 (Ct.App.2002). Therefore, when a victim testifies and is subject to cross-examination, the details of the victim's complaint or report are not admissible. *State v. Cox*, 274 S.C. 624, 627–628, 266 S.E.2d 784, 786 (1980).

In the present case, the police obtained written statements from each of the three child witnesses, recounting, in detail, the sexual activity that occurred with Respondent. After each witness testified on direct, the State introduced the witness's corresponding written statement into evidence, and defense counsel affirmatively stated that he did not object. Because the victims testified and were subject to cross, and because the victims' written statements went beyond describing the time and place of the incident, the statements constituted inadmissible hearsay. Therefore, defense counsel's failure to object to their introduction fell below an objective standard of reasonableness. *Dawkins*, 346 S.C. at 156, 551 S.E.2d at 263; *but see Sanchez v. State*, 351 S.C. 270, 569 S.E.2d 363 (2002) (Burnett & Toal, JJ., dissenting) (noting that there are circumstances where it may be reasonable trial strategy for counsel to decline to object to inadmissible hearsay testimony in a case involving criminal sexual conduct).

But given that the witnesses' testimonies on direct provided overwhelming evidence that sexual abuse did in fact occur, counsel's failure to object to the admission of the written

statements did not prejudice the outcome of Respondent's case. The evidence of abuse was overwhelming even without the content in the written statements.

■ Second, as to counsel's failure to adequately cross-examine the child victims, we find that the inconsistencies between the testimony and the written statements were not substantial enough to warrant a cross-examination beyond that which defense counsel conducted.

All of the children who participated in the "game" testified and were subject to cross-examination. Counsel cross-examined two of the four witnesses. During cross, counsel did not focus on the inconsistencies between the direct testimonies and the written statements; instead counsel raised the inconsistencies in his closing argument. The gist of counsel's closing argument was that the written statements were more descriptive than the live testimonies (and vice versa), and therefore the witnesses lacked credibility. After reviewing each of the inconsistencies cited by counsel in closing, we find that the inconsistencies were insignificant, relating, for example, to the number of times a particular sexual act occurred or whether it occurred in the bathroom or in the living room. Therefore, it may have been reasonable for counsel to highlight the inconsistencies in closing rather than attempt to use them for impeachment purposes. Moreover, given that this was a sexual abuse case involving children, it may have been prudent for counsel to limit cross-examination to the issues he thought were most important, without picking apart the witnesses' testimonies based on meaningless inconsistencies.

Nonetheless, because we do not have the benefit of counsel's testimony as to why he limited cross and instead raised the inconsistencies during closing, we cannot scrutinize counsel's trial strategy. As a result, we focus on whether counsel's assistance prejudiced Respondent's case as required under *Strickland v. Washington.* In light of the overwhelming evidence presented by the State, namely the live, consistent testimonies of four witnesses who testified, in detail, that sexual abuse occurred, and our findings that (1) Respondent's case was not prejudiced by the admission of the witnesses' written statements, and (2) counsel's decision to attack witness credibility in closing rather than in cross does not, on its face,

constitute error, we find that there is not a "reasonable probability" that but for counsel's error, the outcome of Respondent's case would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

### CONCLUSION

Because there is no evidence of probative value sufficient to support the PCR court's finding that counsel was ineffective, the PCR court's decision is REVERSED.

MOORE, WALLER, and BURNETT, JJ., concur.
PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES:

I agree with the majority that the post-conviction relief judge erred in granting respondent a new trial. It is apparent from the trial record that counsel's strategy was to exploit in closing argument the only weakness in the State's case, that is, the inconsistencies between the victims' written statements and their trial testimony. Having concluded that counsel's performance was not objectively unreasonable, I find it unnecessary to reach the second prong of an ineffective assistance of counsel claim, that is, whether respondent was prejudiced as a result of counsel's actions.