# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Nathaniel Teamer, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2013-001284

ON WRIT OF CERTIORARI

Appeal from Spartanburg County
Brooks P. Goldsmith, Post-Conviction Relief Judge

Opinion No. 27622
Submitted October 15, 2015 – Filed April 13, 2016

**REVERSED**

Attorney General Alan Wilson, Senior Assistant Deputy
Attorney General Alicia A. Olive and Assistant Deputy
Attorney General Suzanne H. White, all of Columbia, for
Petitioner.

C. Rauch Wise, of Greenwood, for Respondent.

**JUSTICE KITTREDGE:** This is a post-conviction relief (PCR) matter.
Respondent Nathaniel Teamer was convicted of first-degree burglary, felony
driving under the influence (DUI) resulting in great bodily injury, and failure to
stop for a blue light (FSBL) resulting in great bodily injury and sentenced to an

aggregate term of thirty years in prison. Following the court of appeals' dismissal of Respondent's direct appeal, Respondent filed a PCR application. The PCR court granted relief on four grounds. We granted the State's petition for a writ of certiorari to review the PCR court's decision. We reverse and reinstate Respondent's convictions and sentences.

## I.

The State first argues the PCR court erred in finding Respondent's trial counsel ineffective for failing to move for dismissal of Respondent's DUI charge. Specifically, the State argues the PCR court erred in determining the motion to dismiss likely would have been successful because the PCR court misinterpreted section 56-5-2953 of the South Carolina Code. We agree.

State law generally requires a person charged with DUI to have his conduct at the incident site recorded on video, including his performance of any field sobriety tests. S.C. Code Ann. § 56-5-2953(A) (Supp. 2015).[1] However, subsection (B) of the statute creates exceptions to this general requirement:

> Failure by the arresting officer to produce the video recording required by this section is not alone a ground for dismissal of any charge made pursuant to [s]ection 56-5-2930, 56-5-2933, or 56-5-2945 if the arresting officer submits a sworn affidavit certifying that the video recording equipment at the time of the arrest or probable cause determination, or video equipment at the breath test facility was in an inoperable condition, stating which reasonable efforts have been made to maintain the equipment in an operable condition, and certifying that there was no other operable breath test facility available in the county or, in the alternative, submits a sworn affidavit certifying that it was physically impossible to produce the video recording because the person needed emergency medical treatment, or exigent circumstances existed. *In circumstances including, but not limited to, road blocks, traffic accident investigations, and citizens' arrests, where an arrest has been made and the video recording equipment has not been activated by blue lights, the failure by the*

---

[1] Although the statute has been amended since Respondent's arrest in 2006, the portions relevant to this case remained substantially the same. We therefore cite to the latest version of the statute.

> *arresting officer to produce the video recordings required by this section is not alone a ground for dismissal.* However, as soon as video recording is practicable in these circumstances, video recording must begin and conform with the provisions of this section. *Nothing in this section prohibits the court from considering any other valid reason for the failure to produce the video recording based upon the totality of the circumstances*; nor do the provisions of this section prohibit the person from offering evidence relating to the arresting law enforcement officer's failure to produce the video recording.

*Id.* § 56-5-2953(B) (emphasis added).

Shortly before Respondent's trial, we held that failure to comply with the video-recording requirement justifies dismissal of a DUI charge, unless noncompliance is excused under subsection (B) above. *City of Rock Hill v. Suchenski*, 374 S.C. 12, 17, 646 S.E.2d 879, 881 (2007) (holding dismissal of a DUI charge "is an appropriate remedy provided by [section] 56-5-2953 where a violation of subsection (A) is not mitigated by subsection (B) exceptions").

In the present case, Respondent's FSBL and felony DUI charges arose from a chain of events that began in the City of Spartanburg in the early morning hours of February 3, 2006. As Respondent drove out of the parking lot of a convenience store around 1:00 a.m., he pulled out in front of Officer Timothy St. Louis of the City of Spartanburg Department of Public Safety. Officer St. Louis began following Respondent's car because he noticed Respondent was driving with his headlights off and because Respondent threw a beer can out of his vehicle's window. Officer St. Louis activated his recording camera and initiated his blue lights, suspecting the driver may have been intoxicated.[2] However, Respondent did not stop and continued to drive erratically. Officer St. Louis turned off his lights and siren, pursuant to the city's "no chase" policy, and put out a "be on the lookout" (BOLO) alert to county and state officers that included a description of Respondent's car and license plate.

Moments later, Spartanburg County Sheriff's Deputy David Evett spotted a vehicle matching the description from the BOLO traveling with its headlights off. When Deputy Evett pulled close behind Respondent's vehicle to verify the license plate number before initiating a traffic stop (by activating his lights and siren),

---

[2] This video was introduced at trial.

Respondent took off at a high rate of speed. Deputy Evett activated his lights and siren and pursued Respondent, but at a distance, as Respondent continued to flee at a high rate of speed and without headlights.[3]

Deputy Evett lost sight of Respondent's vehicle, but came in sight of his vehicle just as the vehicle collided head-on with another vehicle.[4] After witnessing sparks from the collision, Deputy Evett radioed for back-up and medical assistance, then exited his patrol car and checked on both drivers. The driver of the other vehicle was seriously injured. Although Respondent was injured, he managed to crawl through the passenger-side window and attempted to flee on foot. Deputy Evett stopped Respondent. Respondent and the driver of the other vehicle were transported to the hospital. Deputy Evett never activated his video camera.

Lance Corporal Dwayne Darity of the South Carolina Highway Patrol responded to the hospital to investigate the accident. Corporal Darity believed Respondent was intoxicated because Respondent was uncooperative and smelled of alcohol. Corporal Darity charged Respondent with felony DUI but did not conduct any field sobriety tests because he suspected Respondent suffered serious injuries in the collision. Blood and urine samples collected from Respondent at the hospital revealed Respondent had marijuana and alcohol in his system at the time of the accident.[5] Marijuana was also found in the vehicle Respondent had been driving.

The PCR court found that Respondent's trial counsel was deficient for not moving to dismiss the DUI charge because, as the PCR court posited, *Suchenski* established that an officer's failure to comply with the video-recoding requirement mandated dismissal of the charge. The PCR court also (erroneously) concluded

---

[3] Respondent traveled in excess of seventy miles per hour in areas where the speed limit ranged from thirty-five to forty-five miles per hour.

[4] Respondent's headlights were off at the time of the collision.

[5] Respondent's blood alcohol content was below the legal limit; however, the State contended Respondent was nonetheless driving under the influence because blood tests indicated he had smoked marijuana within 90 minutes of the accident. The State's forensic toxicology expert testified that the amount of marijuana in Respondent's system would impair his ability to drive and that this impairment would be further exacerbated by the presence of any amount of alcohol, even an amount below the legal limit.

that Respondent was prejudiced because, although subsection (B) of the statute excuses noncompliance with the recording requirement in certain situations, those exceptions require the arresting officer to submit a sworn affidavit. As no affidavit was submitted in this case, the PCR court concluded that the motion to dismiss would have been granted and, therefore, trial counsel was ineffective.

The PCR court committed an error of law in interpreting subsection (B) to require an affidavit under all exceptions. The follow-up finding that the trial court would have likely granted a motion to dismiss the DUI charge, which was the basis for the PCR court's finding of prejudice, was therefore controlled by an error of law, and we reverse. *See Bryant v. State*, 384 S.C. 525, 528–29, 683 S.E.2d 280, 282 (2009) (citation omitted) (stating statutory interpretation is a question of law, and this Court will reverse a PCR court's decision when it is controlled by an error of law).

We have previously interpreted the exceptions in subsection (B) to not require a sworn affidavit in all circumstances:

> Subsection (B) of section 56-5-2953 outlines several statutory exceptions that excuse noncompliance with the mandatory videotaping requirements. Noncompliance is excusable[] (1) if the arresting officer submits a sworn affidavit certifying the video equipment was inoperable despite efforts to maintain it; (2) if the arresting officer submits a sworn affidavit that it was impossible to produce the videotape because the defendant either (a) needed emergency medical treatment or (b) exigent circumstances existed; (3) in circumstances including, but not limited to, road blocks, traffic accidents, and citizens' arrests; or (4) for any other valid reason for the failure to produce the videotape based upon the totality of the circumstances.

*Town of Mount Pleasant v. Roberts*, 393 S.C. 332, 346, 713 S.E.2d 278, 285 (2011). Thus, based on this Court's interpretation of the statute in *Roberts*, an affidavit is not needed to qualify for the third and fourth exceptions. As Respondent was arrested for FSBL in connection with a traffic accident, this case falls within the third exception.

This Court has recently interpreted the third exception, regarding traffic accidents, to excuse the videotaping requirement only up to the point where videotaping

becomes practicable. *State v. Henkel*, 413 S.C. 9, 14, 774 S.E.2d 458, 461 (2015). Here, because Respondent's vehicle's headlights were off, Deputy Evett could not see Respondent's vehicle until it collided with the other vehicle. Once the accident occurred, the urgency of the situation (calling for back-up, assessing injuries, and securing Respondent who was attempting to flee) understandably became Deputy Evett's primary concerns. We further note Respondent was not suspected of DUI until Corporal Darity spoke with Respondent at the hospital.[6]

The failure to initiate videotaping in this case could also be excused under the totality of the circumstances, which is the fourth exception. As this Court recognized in *Henkel*, "Subsection (A) was intended to capture the interactions and field sobriety testing between the subject and the officer in a typical DUI traffic stop where there are no other witnesses." *Id.* (citing *Roberts*, 393 S.C. at 347, 713 S.E.2d at 285). This situation, created solely by Respondent's dangerous and evasive driving, does not resemble a typical traffic stop. As Respondent was pursued and arrested in connection with the FSBL charge and was not charged with felony DUI until after he was transported to the hospital, no field sobriety tests were administered or could have been captured on video. The legislative concerns with videotaping one-on-one traffic stops are not implicated under the facts of this case, and under the totality of the circumstances, Deputy Evett's failure to produce a videotape was reasonable and excusable.

Therefore, even if trial counsel was deficient in failing to move to dismiss the felony DUI charge based on the lack of videotape evidence, the prejudice prong required for an ineffective assistance of counsel claim cannot be established. It was purely speculative for the PCR court to conclude that the motion likely would have been granted. Perhaps more importantly, the prejudice finding was grounded in the erroneous finding that all subsection (B) exceptions require an affidavit. Under both the totality of the circumstances and the traffic-accident exception, neither of which require an affidavit, the trial court would not have abused its discretion in denying a motion to dismiss the DUI charge. Thus, we reverse the

---

[6] Unlike Officer St. Louis, Deputy Evett began following Respondent because Respondent's vehicle matched the BOLO description of the vehicle that failed to stop for a blue light—not because he suspected Respondent of DUI. Deputy Evett testified he did not spend sufficient time with Respondent at the accident scene to suspect Respondent was under the influence of drugs or alcohol. Deputy Evett was dealing with a serious motor vehicle accident and was focused on ensuring those injured received prompt medical attention.

PCR court's grant of relief to Respondent on this ground.

## II.

The State next argues the PCR court erred in finding Respondent's trial counsel ineffective for failing to impeach one of the witnesses to the home invasion with a prior criminal conviction. While we hold there is evidence in the record to support the PCR court's finding that counsel was deficient, we nevertheless find the PCR court erred in finding this failure prejudiced Respondent.

Respondent was convicted of first-degree burglary in connection with his invasion of the home of his long-time neighbors—Mary Gray (Mary); Mary's two children, Erica Gray (Erica) and Donald Martin (Donald); and Mary's nine-year-old granddaughter, Javanica. At trial, Erica testified Respondent broke into the home, held her and her family at gunpoint, and robbed them. Mary, Donald, and Javanica also testified that Respondent broke into the home and robbed the family at gunpoint. Further, Officer Adrian Patton of the Spartanburg Department of Public Safety, who responded to the scene within minutes of the incident, testified the victims immediately identified Respondent as the intruder, even though he was wearing a ski mask, because they knew Respondent well and recognized his voice. At trial, defense counsel cross-examined Erica about her 1997 conviction for distributing crack-cocaine and cross-examined Donald about his 2002 conviction for drug distribution.

At the PCR hearing, Respondent introduced another conviction for Erica, a 1995 conviction for giving false information to police about a shooting and burglary that took place at her home. Trial counsel testified he received a printout of the National Crime Information Center report on Erica before trial, and the report showed an arrest for giving false information; however, trial counsel testified he did not use this information to impeach Erica at trial because the report did not give a disposition for the charge.

The PCR court found trial counsel was deficient for failing to impeach Erica with her prior conviction for giving false information to police because the conviction was likely admissible under Rule 609(b), SCRE, governing the admission of prior convictions more than ten years old, and the balancing test in *State v. Colf*, 337 S.C. 622, 525 S.E.2d 246 (2000). The PCR court also found Respondent was prejudiced by this deficiency because Erica was an important witness in establishing Respondent's identity as the intruder and impeachment of Erica with

this conviction would have "directly affected" the outcome of the trial.

Although there is evidence to support the PCR court's finding that trial counsel was deficient for failing to impeach Erica with the prior conviction, we find the PCR court erred in finding Respondent was prejudiced because there is not a reasonable probability the impeachment of Erica would have directly affected the outcome of Respondent's trial.  *See Dawkins v. State*, 346 S.C. 151, 156, 551 S.E.2d 260, 262 (2001) ("To show prejudice, the applicant must show, but for counsel's errors, there is a reasonable probability the result of the trial would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." (citing *Brown v. State*, 340 S.C. 590, 593, 533 S.E.2d 308, 309–10 (2000))).

Specifically, many witnesses identified Respondent, for he was well known to Erica and the other witnesses.  Also, defense counsel used Erica's distribution of crack-cocaine conviction for impeachment purposes.  Moreover, Officer Patton testified that when he arrived on the scene, the victims immediately identified Respondent as the burglar.  Therefore, there is no evidence to support the PCR court's finding that the additional impeachment of Erica would have undermined the evidence of Respondent's identity as the intruder sufficient to create a reasonable probability that the jury would have found Respondent not guilty of burglary.  *See Edwards v. State*, 392 S.C. 449, 459, 710 S.E.2d 60, 66 (2011) (explaining that, to prevail, a PCR applicant "must show that the factfinder would have had a reasonable doubt respecting guilt" had the omitted evidence been introduced at trial and noting that no prejudice results from counsel's failure to bring forward cumulative evidence (citation and internal quotation marks omitted)); *Harris v. State*, 377 S.C. 66, 78, 659 S.E.2d 140, 147 (2008) (finding trial counsel's failure to impeach a witness who identified the accused as the perpetrator of the crime was "inconsequential" and not prejudicial where other evidence of identity was properly admitted at trial); *Huggler v. State*, 360 S.C. 627, 634–36, 602 S.E.2d 753, 757–58 (2004) (finding the PCR applicant was not prejudiced by trial counsel's failure to object to the introduction of the victims' written statements into evidence or trial counsel's alleged failure to adequately cross-examine witnesses where the State presented overwhelming evidence from four witnesses who testified in detail against the applicant).  We therefore reverse the PCR court's granting of relief on this ground.

## III.

The State next argues the PCR court erred in finding trial counsel was ineffective for failing to move for a directed verdict on the burglary charge. We agree.

The PCR court concluded trial counsel was deficient in failing to move for a directed verdict because Respondent contended he had permission to enter the victims' home. *See* S.C. Code Ann. § 16-11-311(A) (2015) (defining first-degree burglary as, in part, entering a dwelling without consent). The PCR court also found Respondent was prejudiced because the directed verdict motion likely would have been granted. This was error.

As a matter of law, Respondent would not have been entitled to a directed verdict on the burglary charge. In ruling on a directed verdict motion, the trial court does not view the evidence in the light most favorable to the movant. *See, e.g., State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006) (explaining that when ruling on a motion for a directed verdict, the evidence must be viewed in a light favorable to the nonmoving party, and the trial court is concerned only with the existence or nonexistence of evidence, not its weight); *State v. Prince*, 316 S.C. 57, 64, 447 S.E.2d 177, 181 (1993) ("[I]n ruling on a motion for directed verdict, the trial court must view the evidence in the light most favorable to the State.").

Viewing the evidence in the light most favorable to the State, ample evidence was presented to survive a directed verdict motion. For example, Donald testified that he heard a knock at the door, after which Respondent identified himself by his nickname. Donald stated he cracked the door, at which point Respondent forced open the door and pushed his way into the home while wielding a shotgun. Donald testified Respondent order him to take off his pants and shoes, and then took $500 from him. Properly viewing all the evidence in the light most favorable to the State, as a court must in evaluating a directed verdict motion, had a directed verdict motion been made, it would have been denied. *See Prince*, 316 S.C. at 64, 447 S.E.2d at 181–82 ("The case should be submitted to the jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced." (citations omitted)). We thus hold that the PCR court erred as a matter of law in finding Respondent's trial counsel was deficient for failing to move for a directed verdict on the burglary charge.

# IV.

Finally, the State argues the PCR court erred in finding Respondent's trial counsel ineffective for failing to object to a portion of the trial court's jury instructions because no case law existed at the time of Respondent's trial that would have made the instruction objectionable.  Again, we agree.

The trial court's charge to the jury included the following instruction: "Your sole objective of course is to simply reach the truth in the matter, and by doing that you will have fulfilled your obligations as jurors, and that is to simply give both the [S]tate and [Respondent] a fair and impartial trial."  Five years after Respondent's trial, this Court criticized a similar instruction: "This court is of the confirmed opinion that whatever verdict you reach will represent truth and justice for all parties that are involved in this case."  *State v. Daniels*, 401 S.C. 251, 254, 737 S.E.2d 473, 474 (2012) (internal quotation marks omitted).  This Court ordered

> trial judge[s] to remove any suggestion from [their] general sessions charges that a criminal jury's duty is to return a verdict that is "just" or "fair" to all parties.  Such a charge could effectively alter the jury's perception of the burden of proof, substituting justice and fairness for the presumption of innocence and the State's burden to prove the defendant's guilt beyond a reasonable doubt.  Moreover, to a lay person, the "all parties involved" in a criminal case may well extend beyond the defendant and the State, and include the victim.  These inaccurate and misleading charges risk depriving a criminal defendant of his right to a fair trial.

*Id.* at 256, 737 S.E.2d at 475.

The PCR court found trial counsel was ineffective for failing to object to the trial court's instruction, even though *Daniels* had not yet been decided, because if trial counsel had made an objection, the issue would have been preserved for appellate review.  The PCR court also found Respondent was prejudiced because the jury likely "relieved the State of its burden of proof."

We disagree and hold that the PCR court erred in finding trial counsel ineffective for failing to object to the jury instruction when no case law existed rendering the instruction improper per se.  This Court has previously held that reasonable representation does not require trial counsel to foresee successful appellate

challenges to novel questions of law. *E.g.*, *Gilmore v. State*, 314 S.C. 453, 457, 445 S.E.2d 454, 456 (1994) ("We have never required an attorney to be clairvoyant or anticipate changes in the law . . . ." (citing *Thornes v. State*, 310 S.C. 306, 309–10, 426 S.E.2d 764, 765 (1993))), *overruled on other grounds by Brightman v. State*, 336 S.C. 348, 520 S.E.2d 614 (1999); *Thornes*, 310 S.C. at 309–10, 426 S.E.2d at 765 ("This Court has never required an attorney to anticipate or discover changes in the law, or facts which did not exist, at the time of the trial."). As trial counsel's performance was not deficient, we reverse the PCR court's grant of relief on this ground.

## V.

For the foregoing reasons, the PCR court's grant of relief to Respondent is reversed. Respondent's convictions and sentences are hereby reinstated.

**REVERSED.**

**BEATTY, Acting Chief Justice, HEARN, J. and Acting Justice Jean H. Toal, concur. PLEICONES, C.J., not participating.**